IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND; GARY J. MEYERS, *in his official capacity as fiduciary*; FINISHING TRADES INSTITUTE, *formerly known as* INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES JOINT APPRENTICESHIP AND TRAINING FUND; POLITICAL ACTION TOGETHER FUND; and PAINTERS AND ALLIED TRADES LABOR MANAGEMENT COOPERATION INITIATIVE, | * * * * * * * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. RDB-12-272 |
| 3 R PAINTING & CONTRACTING CO., INC., *doing business as* 3R PAINTING & CONTRACTING INC., | * * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs, International Painters and Allied Trades Industry Pension Fund ("Pension Fund"), Pension Fund fiduciary Gary J. Meyers ("Mr. Meyers"), Finishing Trades Institute ("FTI"), Political Action Together Fund ("PAT Fund"), and the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI") (together, "Plaintiffs") have filed suit against the Defendant 3 R Painting & Contracting Co., Inc. ("Defendant"). The Plaintiffs move, under sections 502(g)(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2), 1145, and section 301 of the Labor Management

1

Relations Act, 29 U.S.C. § 185(a), for unpaid contributions, interest on those unpaid contributions, liquidated damages, and attorneys' fees and costs incurred by the Pension Fund pursuant to the collective bargaining agreement between the Defendant and the International Painters and Allied Trades Industry.  *See* Complaint, ECF No. 1.  Because the Defendant has failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry of default judgment against the Defendant pursuant to Rule 55 of the Federal Rules of Civil Procedure.  For the reasons that follow, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 9) is GRANTED.  Judgment in the amount of $138,481.75 SHALL BE ENTERED for unpaid contributions, interest, and liquidated damages, against the Defendant 3 R Painting & Contracting Co., Inc., doing business as 3R Painting & Contracting Inc.  Attorneys' fees and costs SHALL BE ENTERED in the amount of $11,478.31 and SHALL BE INCLUDED in the judgment.  Additionally, post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment.  Thus, the total amount of damages awarded to the Plaintiffs is $149,960.06, plus post-judgment interest.  Additionally, Plaintiffs are awarded the injunctive relief they seek—namely, the Defendant shall provide the Plaintiffs its monthly remittance reports to date and submit to an audit of its payroll books and records.

## BACKGROUND

At bottom, the Plaintiffs allege that the Defendant failed to make monthly contributions required under the parties' collective bargaining agreement.  The following facts are alleged in the Plaintiffs' Complaint.  The Plaintiff International Painters and Allied Trades Industry Pension Fund ("Pension Fund") is a trust fund established under 29 U.S.C.

§ 186(c)(5).[1]  The Pension Fund was established to provide retirement income to union members through the International Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and Allied Trades Industry Annuity Plan ("Annuity Plan").  Compl. ¶¶ 4-6.  Plaintiff Gary J. Meyers ("Mr. Meyers") is a fiduciary of the Pension Fund.  Id. ¶ 7.  The Pension Fund and Mr. Meyers are "authorized collection fiduciar[ies] and agent[s]" for the Pension Plan and Annuity Plan, as well as for three other plaintiff-entities—the Political Action Together Fund ("PAT Fund"), the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), and the Finishing Trades Institute ("FTI"), which was formerly known as the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund.  Id. ¶ 8.

Like the Pension Fund, the FTI is a trust fund established by the International Painters and Allied Trades Industry (the "Union") under 29 U.S.C. § 186(c)(5).  Compl. ¶ 8-9.  The PAT Fund, which includes the Political Action Together – Legislative and Educational Committee and the Political Action Together – Political Committee, is an unincorporated association or fund established by the Union pursuant to the Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431 *et seq.*[2]  The purpose of the PAT Fund is to advance the political interests of its members.  Compl. ¶ 10.  The LMCI is an unincorporated organization established by the Union under 29 U.S.C. § 186(c)(9).[3]

---

[1] Compl. ¶ 4. Section 186(c)(5) of Title 29, which corresponds to section 302 of the Labor Management Relations Act, regulates employee benefit plans that involve the use of employee contributions.  29 U.S.C. § 186(c)(5).

[2] Compl. ¶ 10. The Federal Election Campaign Act of 1971, 2 U.S.C. §§ 431 *et seq.*, regulates, among other things, the money spent by unions for use in federal elections.

[3] Section 186(c)(9) regulates employer contributions to labor management committees.  29 U.S.C. § 186(c)(9).

The Defendant 3 R Painting & Contracting Inc. ("Defendant") is a corporation that employs members of local labor unions or district councils affiliated with the International Union of Painters and Allied Trades ("Union").  Compl. ¶ 15.  The Defendant has agreed to abide by a collective bargaining agreement ("Collective Bargaining Agreement") with one or more local labor unions associated with the Union.  *See* Collective Bargaining Agreement, Ex. 1, ECF No. 1-3.  The Defendant is also a party to the Union's Agreement and Declaration of Trust ("Trust Agreement"), which states that employers shall contribute to the Pension Fund in amounts required by the Collective Bargaining Agreement.  *See* Trust Agreement Art. VI, Ex. 2, ECF No. 1-4.

As a party to the Collective Bargaining Agreement and Trust Agreement (together, "Labor Contracts"), the Defendant's obligations were as follows:

> (1) To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement, and plan documents; (2) to file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract; (3) to produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay costs of the audit if found to be delinquent or in violation of the Trust Agreement or Plan; and (4) to pay liquidated damages, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the

Company's failure to comply with its contractual and statutory obligations . . . ."

Compl. ¶ 18(a)-(d) (citing Trust Agreement Art. VI, §§ 2-6; Pension Plan §§ 10.07, 10.12).

On January 27, 2012, the Plaintiffs filed suit to recover alleged delinquent payments from the Defendant pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(g)(2), 1145, and section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). *See* Complaint, ECF No. 1. At the time of filing, the Plaintiffs believed the Defendant had failed to pay monthly contributions during a period from October 2010 through December 2011. Compl. ¶ 21.

In Count I of the six-count Complaint, the Plaintiffs request damages for the amount of the Defendant's unpaid contributions, as well as any additional amounts that may have come due during the pendency of the suit and interest accruing on those unpaid contributions. *Id.* ¶ 22. In Count II, the Plaintiffs seek an injunction requiring the Defendant to permit an audit of its records so that the Plaintiffs can determine the precise extent of the Defendant's delinquency. *Id.* ¶ 30. They ask that the Defendant pay for this audit. *Id.* The Plaintiffs also request the Court to enter judgment, after an audit has been conducted, for damages in the forms of the unpaid contributions, interest on those unpaid contributions, liquidated damages, audit costs, and reasonably attorneys' fees and costs. *Id.* ¶ 33 (Count III). In Count IV, the Plaintiffs request this Court to permanently enjoin the Defendant from violating the terms of the Labor Contracts. *Id.* ¶ 44. Lastly, in Counts V and VI, the Plaintiffs ask the Court to enter judgment against the Defendants for the "sum certain currently due plus any additional amounts which become due and owing during the

pendency of this litigation" together with "liquidated damages [and] interest and costs, including reasonable attorneys' fees." *Id.* ¶¶ 48, 50.

After the Plaintiffs filed their Complaint on January 27, 2012, the summons and Complaint were properly served on the Defendant on March 15, 2012. *See* ECF No. 4. Accordingly, the Defendant's answer was due on March 28, 2012. *Id.* The parties filed a Consent Motion on March 27, 2012, ECF No. 5, requesting an extension of time for the Defendant to file an answer, and this Court granted an extension, ECF No. 6, giving the Defendant until April 30, 2012, to file its answer. Because the Defendant did not file a response or any affirmative defenses by the extended deadline, the Clerk of Court filed an entry of default on July 12, 2012. *See* ECF No. 8. As the Defendant has failed to appear, answer, plead, or otherwise defend in this matter, the Plaintiffs now seek an entry of default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure.

STANDARD OF REVIEW

Entries of default and default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure. Rule 55(a) provides that "[w]hen a party . . . has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." If, after entry of default, the plaintiff's complaint does not specify a "sum certain" amount of damages, the court may enter a default judgment against the defendant pursuant to Rule 55(b)(2). In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, "liability is not deemed established simply because of the default . . . and the court, in its discretion, may

6

require some proof of the facts that must be established in order to determine liability." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998); *see also Ryan*, 253 F.3d at 780-81. Although the United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then turn to the determination of damages. *See Ryan*, 253 F.3d at 780-81. The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. *See Lawbaugh*, 359 F. Supp. 2d at 422. Rule 54(c) of the Federal Rules of Civil Procedure limits the type and amount of damages that may be entered as a result of a party's default: "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975)). In doing so, "[i]t is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*,

*Mongue v. Portofino Ristorante*, No. WDQ-09-3144, 2010 WL 4629898, at *3-4 (D. Md. May 25, 2010) (collecting cases); *see also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010).

ANALYSIS

Because the Defendant has failed to defend in this action and the Clerk of Court has filed an entry of default, the requirements for ordering default judgment have been met. *See* Fed. R. Civ. P. 55(a)-(b). As this Court has previously found, default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *Lawbaugh*, 359 F. Supp. 2d at 421. For the reasons stated below, the Plaintiffs are entitled to default judgment. This Court first reviews the allegations supporting the Defendant's liability and then determines the appropriate amount of damages. In determining damages, this Court finds that no evidentiary hearing is necessary and instead relies on the affidavits and other evidence in the record to determine the appropriate sum. *See, e.g., Mongue v. Portofino Ristorante*, 2010 WL 4629898, at *3-4. This Court likewise uses the evidence in the record to review the Plaintiffs' request for injunctive relief.

### I.   The Defendant's Liability

In considering a motion for default judgment, this Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan*, 253 F.3d at 780-81. Nevertheless, this Court must determine "whether the well-pleaded allegations . . . support the relief sought in this action." *Id.* at 780. The Plaintiffs show proof that under the Labor Contracts, the Defendant agreed to make full and timely contribution payments to the Funds. Montemore Aff. ¶ 8, ECF No. 9-4; Collective Bargaining Agreement, Art. 10. The

Defendant also agreed to pay liquidated damages, interest, audit costs, and all costs of litigation expended by the Pension Fund to collect delinquent contributions.  *See* Montemore Aff. ¶ 9; Trust Agreement Art. IV, §§ 4, 6.

In support of the Plaintiffs' claim that the Defendant violated the terms of the Labor Contracts, they filed the affidavit of Thomas C. Montemore, the Assistant to the Fund Administrator of the Union and Pension Fund.  Mr. Montemore attests that he has personal knowledge of the Labor Contracts at issue in this case.  Montemore Aff. ¶ 4.  He states that, based on information currently available to the Pension Fund, the Defendant owes at least $114,269.54 in unpaid contributions to the Pension Fund, the Annuity Fund, the FTI, the LMCI, and the PAT Fund for a period from November 2011 through May 2012.[4]  Mr. Montemore indicates that the amount of unpaid contributions he cites is based in large part on reports submitted by the Defendant for the period from November 2011 through April 2012, which reveal a delinquency of $98,964.14.  *Id.* ¶ 9(a).  Because the Defendant has failed to submit remittance reports for May 2012, the Plaintiffs have had to estimate the remainder of the total unpaid contributions.  *Id.*  Mr. Montemore states that the Defendant owes an estimate of $15,305.40 for May 2012, an amount reached by "averaging the three months of contributions prior to the first month in which no report is received."  *Id.*  In addition, Mr.

---

[4] Montemore Aff. ¶ 9. The Plaintiffs explain in their Motion for Default Judgment that at the time this action was filed, the information available to the Pension Fund suggested that the Defendant owed an estimated $476,989.17 in unpaid contributions for a period from October 2010 through December 2011.  *See* Compl. ¶ 21; Compl. Ex. 4. Based on information currently available to the Pension Fund, the Plaintiffs now claim a delinquency of $114,269.54 in unpaid contributions for a period from November 2011 through May 2012. This figure is supported by Mr. Montemore's affidavit.  *See* Montemore Aff. ¶ 9(a).

9

Montemore calculates that the Defendant owes at least $1,358.30 in interest and $22,853.91 in liquidated damages. *Id.* ¶ 9(b)-(c).

The unpaid contributions to which Mr. Montemore attests support the Plaintiffs' cause of action under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act. Specifically, the Plaintiffs bring suit under section 515 of ERISA, which states as follows:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Moreover, section 502(g) of ERISA, on which the Plaintiffs also rely, states that in an action under section 1145 in which judgment is awarded in favor of the pension plan, the court shall award the following: (1) unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages in "an amount equal to the greater of . . . (i) interest on the unpaid contributions, or . . . (ii) liquidated damages provided for under the plan not in excess of 20 percent" of the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) "such other legal and equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). The Supreme Court has stated that these sections of ERISA "provide trustees of multiemployer benefit plans with an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for Northern Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). The Court of Appeals for the Fourth Circuit has likewise found that in an action based on section 515 of ERISA, "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents."

*Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997).  Therefore, the Plaintiffs well-pleaded factual allegations support the relief requested under ERISA.

The Plaintiffs also sue under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).  Section 301(a) states as follows:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  Section 301(a) is the original source of pension fund collection suits in federal court.  *See, e.g.*, *Lewis v. Benedict Coal*, 361 U.S. 459, 470 (1960).  Employee benefit trust funds and fund trustees have standing to sue under section 185(a) as third-party beneficiaries of a collective bargaining agreement.  *See, e.g.*, *Chicago Plastering Inst. Pension Trust Fund v. William A. Duguid Co.*, 761 F. Supp. 1345, 1347 n.2 (N.D. Ill. 1991).  Plaintiffs allege that the Defendant was a party to the Labor Contracts with the Union and was required under those contracts to make monthly payments to the Funds.  The Plaintiffs' well-pleaded allegations establish the Defendant's liability for breach of the Labor Contracts.  This dispute—a suit for violation of labor contracts—can thus be remedied under Section 301, and the Plaintiffs, who are the Pension Fund and its fiduciary, have standing to sue.  For these reasons, Section 301 also provides a basis for the Plaintiffs' suit.

## II.     The Plaintiffs' Award of Damages and Injunctive Relief

In this action based on ERISA and breach of contract, the Plaintiffs are entitled to the following damages: (1) the amount of the Defendant's unpaid contributions; (2) interest on those unpaid contributions; (3) an amount equal to the greater of (a) the interest on the unpaid contributions or (b) liquidated damages provided for under the plan and not in excess of 20 percent of the unpaid contributions; (4) reasonable attorneys' fees and costs; and (5) other legal and equitable relief this Court deems appropriate.  *See* 29 U.S.C. § 1132(g)(2); Collective Bargaining Agreement Art. 10; Trust Agreement Art. VI, § 4.

In support of the Plaintiffs' request for unpaid contributions, interest, and liquidated damages, they submit the affidavit of Mr. Montemore as well as the Labor Contracts and Pension Plan, *see* ECF No. 1-5.  In support of their request for attorneys' fees and costs, they submit the affidavit of Jerome A. Flanagan, Esquire, an associate attorney assigned to this case.  *See* Flanagan Aff., ECF No. 9-8.  The Plaintiffs also submit an itemized list of the fees and costs expended by Plaintiffs' counsel, *see* ECF No. 9-9; an Altman Weil Survey on average hourly billing rates for lawyers, *see* ECF No. 9-10; and an Ohio State Bar Association survey on law firm economics, *see* ECF No. 9-11.  The Plaintiffs assert that the Defendant owes $114,269.54 in unpaid contributions; $1,358.30 in interest; $22,853.91 in liquidated damages; and $11,478.31 in attorneys' fees and costs, for a total damages award of $149,960.06.

The Plaintiffs also seek injunctive relief in the form of a court order requiring the Defendant to produce remittance reports to date and to submit to an audit of its payroll books and related records.  In connection with these requests, the Plaintiffs ask that the

Defendant be required to pay for this audit. They ask further that any judgment rendered by this Court not preclude them from the collection of additional delinquencies discovered through the review of the Defendant's remittance reports and audit.

    A. <u>Unpaid Contributions</u>

Mr. Montemore, the Assistant to the Fund Administrator of the Union and Pension Fund, attests that he has personal knowledge of the Labor Contracts at issue in this case. Montemore Aff. ¶ 4. He further attests that the Defendant owes $114,269.54 in unpaid contributions for the period from November 2011 through May 2012. *Id.* ¶ 9(a). This amount is, in large part, based on reports prepared by the Defendant showing a delinquency of $98,964.14. *Id.* The remainder, $15,305.40, is an estimate of the contribution owed for the month of May 2012, for which the Defendant has submitted no remittance report. *Id.* The Plaintiffs came to this amount by averaging the three months of contributions owed during the previous three months. Mr. Montemore attests to, and this Court has verified, the Plaintiff's calculation, illustrated in paragraph 9(a) of the affidavit. *Id.* (averaging $14,476.94, the contribution due for the month of February 2012; $15,192.83, for March 2012; and $16,246.43, for April 2012). After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs $114,269.54 in unpaid contributions.

    B. <u>Interest</u>

Because the Defendant failed to make its monthly contributions to the Pension Fund, the Plaintiffs are also owed interest on those unpaid contributions. ERISA provides for an award of interest on unpaid contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2).

The Labor Contracts indicate that the rate prescribed under 26 U.S.C. § 6621 is to be used to determine interest. *See* Pension Plan § 10.12(b)(2) (providing that interest on unpaid contributions is determined "at the rate for underpayment of federal income taxes under IRC 6621"); Montemore Aff. ¶ 9(b). Section 6621 establishes the federal "underpayment rate" as the sum of "the Federal short-term rate" plus "3 percentage points." 26 U.S.C. § 6621(a). Applying this interest rate, the Plaintiffs submit that they are owed $1,358.30 in interest, from the date that the Defendant's contributions became due through June 25, 2012. After reviewing the competent evidence in support of this figure, this Court awards the Plaintiffs $1,358.30 in interest.

Additionally, the Plaintiffs assert that they are entitled to post-judgment interest in accordance with 28 U.S.C. § 1961. This interest is calculated from the date of the entry of the judgment and at a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." 28 U.S.C. § 1961(a). "Interest shall be allowed on any money judgment in a civil case recovered in a district court." *Id.*; *see also I.A.M. Nat. Pension Fund, Plan A, A Benefits v. Slyman Indus.*, 704 F. Supp. 301, 302-03 (D.D.C.), *aff'd*, 901 F.2d 127, 139 (D.C. Cir. 1990). Consequently, this post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment.

    C. Liquidated Damages

Section 10.12 of the Pension Plan mirrors the language of section 515 of ERISA, 29 U.S.C. § 1132(g)(2), which requires an employer that is delinquent on monthly contributions

under the plan to pay liquidated damages equal to the greater of (1) the amount of interest charged on the unpaid contributions or (2) an amount of liquidated damages not in excess of 20 percent of the unpaid contributions. *See* Pension Plan, § 10.12(b)(3); 29 U.S.C. § 1132(g)(2)(C). As noted above, the total interest is $1,358.30. Twenty percent of the Defendant's unpaid contributions is $22,853.91. Montemore Aff. ¶ 9(c). Evidently, twenty percent of the unpaid contributions is greater than the amount of interest in this case and should be awarded to the Plaintiffs. After reviewing the competent evidence in support of the Plaintiffs' figure, this Court awards the Plaintiffs $22,853.91 in liquidated damages.

D. Attorneys' Fees and Costs

"In an ERISA action, a district court may, in its discretion, award costs and reasonable attorneys' fees to either party under 29 U.S.C. § 1132(g)(1), so long as that party has achieved some relative degree of success on the merits." *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 634 (4th Cir. 2010) (citations omitted). The Labor Contracts likewise provide for payment of attorneys' fees and costs incurred in the Pension Fund's collection of a delinquency. *See* Trust Agreement Art. VI, § 4; Collective Bargaining Agreement Art. 10.3(1)(E). The Plaintiffs submit that in seeking to collect unpaid contributions from the Defendant, they have incurred attorneys' fees and costs in the amount of $11,478.31. Flanagan Aff. ¶ 3, ECF No. 9-8. In support of this figure, the Plaintiffs filed the affidavit of Jerome A. Flanagan, Esquire, an associate attorney employed by Jennings Sigmond, P.C. and assigned to this case. *Id.* ¶ 1. The Plaintiffs also submitted an itemized list of the fees and costs of the Plaintiffs' counsel, *see* ECF No. 9-9; an Altman Weil Survey on average hourly

billing rates for lawyers, *see* ECF No. 9-10; and an Ohio State Bar Association survey on law firm economics, *see* ECF No. 9-11.

The Supreme Court has established a method, commonly called the "lodestar," for determining a reasonable fee. The starting point in the lodestar calculation is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In addition, the specific facts of the case are to be considered in calculating a reasonable figure. The Supreme Court has endorsed a list of twelve factors, first articulated by the Court of Appeals for the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which aid a court in determining a reasonable fee. These factors include the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* at 717-719. The Court of Appeals for the Fourth Circuit has directed courts to consider these twelve factors when calculating the lodestar amount. *Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-44 (4th Cir. 2009).

Applying the lodestar method to the Plaintiffs' request, this Court determines that fees and costs in the amount of $11,478.31 are reasonable and should be awarded to the Plaintiffs in this case. The Plaintiffs' attorneys billed at an hourly rate of $220.00; the legal assistants billed at an hourly rate of $70.00. Flanagan Aff. ¶ 3. The associate attorneys have

16

practiced law for approximately eight to nine years. *Id.* ¶¶ 5-6. These rates fall within the range of reasonable hourly rates provided in the "Rules and Guidelines Determining Lodestar Attorneys' Fees" ("Local Guidelines"), which are a component of the Local Rules for the District Court of Maryland. D. Md. Loc. R. App'x B. Specifically, the Local Guidelines advise that a reasonable hourly rate for an attorney admitted to the bar for five to eight years is $165 to $250. *Id.* § 3. Additionally, the Local Guidelines advise that a reasonable hourly rate for a paralegal is somewhere between $95 and $115. *Id.* The associates' hourly rate of $220 is within the range of reasonable rates, and the legal assistants' hourly rate of $70 is below the Local Guidelines' range. *See id.* Accordingly, this Court finds these hourly rates to be reasonable.

The Plaintiffs submitted an itemization of legal fees and costs. *See* ECF No. 9-9 (listing legal fees totaling $10,842.00 and costs totaling $636.31). This itemization shows that the attorneys billed a total of 54.6 hours—40.4 hours in case development, including initial investigations and communications with opposing counsel; 8.6 hours in the preparation of pleadings; and 5.6 hours in motions practice. These hours are reasonable considering the complexity of the case and the amount of labor required to initiate the case, communicate with opposing counsel regarding the Defendant's continuing delinquency, move for default judgment, and prepare sufficient evidence in support of the damages and injunctive relief requested. Moreover, the requested costs—for filing and service fees; photocopies; and shipping, postage, and facsimile charges—are of the type normally incurred in preparing a case for litigation. Considering the competent evidence provided by the Plaintiffs in conjunction with the Court's Local Guidelines and the twelve *Johnson* factors, this Court

determines that the Plaintiffs' requested fees and costs are reasonable. For this reason, attorneys' fees and costs in the amount of $11,478.31 are awarded to the Plaintiffs and are included in the judgment.

    E.  Injunctive Relief

Finally, Plaintiffs request that this Court order the Defendant to submit monthly remittance reports and permit an audit of payroll records. By becoming a party to the Labor Contracts, the Defendant agreed to submit monthly remittance reports. *See* Montemore Aff. ¶ 8. Additionally, the Defendant became obligated to produce its payroll books and records so that the Pension Fund could conduct an audit. *Id.* ¶ 10. The audit and remittance reports are needed for the parties to determine the precise extent of the Defendant's delinquency. *See id.* ¶¶ 10-11.

Pursuant to section 502(g)(2)(E) of ERISA, a court may award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). Given that the audit and remittance reports have been made necessary by the Defendant's continued delinquency and failure to comply with its contractual obligations, the Plaintiffs are entitled to this injunctive relief. Within twenty days of the entry of the accompanying Order, the Defendant shall submit its monthly remittance reports to date. Also within twenty days of the entry of the Order, the Defendant shall submit to an audit of its payroll books and related records, including but not limited to wage and cash disbursement records, general ledger and other financial records, and tax returns. Trust Agreement Art. VI, § 6. The Defendant shall bear the reasonable costs of this audit. *See id.*

CONCLUSION

For the reasons stated above, the Motion for Default Judgment filed by the Plaintiffs (ECF No. 9) is GRANTED. Judgment in the amount of $138,481.75 SHALL BE ENTERED, for unpaid contributions, interest on the unpaid contributions, and liquidated damages, against the Defendant 3 R Painting & Contracting Co., Inc. Attorneys' fees and costs SHALL BE ENTERED in the amount of $11,478.31 and SHALL BE INCLUDED in the judgment. Thus, the total amount of damages awarded to the Plaintiffs is $149,960.06. Post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, will continue to accrue on the contract claim and judgment. Within twenty days of the entry of the accompanying Order, the Defendant shall submit its monthly remittance reports to date and submit to an audit of its payroll books and related records. The Defendant shall bear the reasonable costs of this audit. It bears noting that this judgment shall not preclude the Plaintiffs' collection of any additional delinquency discovered through their review of the Defendant's remittance reports or audit.

A separate Order follows.

Dated:   January 31, 2013              _____/s/_____

                                       Richard D. Bennett
                                       United States District Judge